UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARY ACY,
as personal representative of
the estate of Joyce Acy and
guardian and conservator of
deceased Joyce Acy's minor
children, Shreka Lachole Acy
and Jamel Eddie Eugene Acy

          **Plaintiff,**

vs.                                       Civ No.  02-1078 LCS/KBM

**CITY OF CLOVIS, et al.**

          **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Curry County's Motion to Dismiss filed October 1, 2002 *(Doc. 10)*.  Plaintiff filed a Memorandum in Opposition on October 17, 2002 *(Doc. 14)* and Defendant filed its Reply on October 29, 2002 *(Doc. 16)*.  The parties participated oral argument before the Court on Monday, December 16, 2002.  Plaintiff and Defendant Curry County have each consented to having the United States Magistrate Judge to conduct all further proceedings in this case pursuant to 28 U.S.C. § 636 (c).[1] The Court, having

---

[1] While Plaintiff and Curry County have consented, Defendants City of Clovis and Presbyterian Health Care Services have neither consented nor refused consent.  The Defendants who have not consented were advised that they may either consent or refuse consent at the telephonic hearing on December 16, 2002.  The Court noted at the hearing that any ruling on this motion would not affect either Presbyterian Health Care Services or the City of Clovis.  In addition, the parties agreed that the Region Five Task Force may not be a separate legal entity in the context of this suit.

1

reviewed the Motion, the Response, the Reply, the arguments of the parties, the applicable law, and the interests of justice, finds that Defendant's Motion is well-taken and should be **GRANTED in part**; however, Plaintiff shall be permitted to amend her Complaint as noted herein.

## I.   BACKGROUND

Plaintiff Mary Acy brings suit as personal representative of the Estate of Joyce Acy and as Guardian and Conservatory of the child of Joyce Acy (hereinafter "decedent"). Decedent was arrested on May 14, 2002 and taken to the Curry County Adult Detention Center (hereinafter, "Curry County Detention Center"). Compl. ¶9. Officers, agents or guards of the Curry County Detention Center searched Decedent's mouth for crack cocaine. *Id*. The officers first attempted to search Decedent's mouth while she was handcuffed to a chair. *Id*. When unsuccessful, the officers placed Decedent face down on the ground and held her arms and legs, and extracted some cocaine from her mouth. Compl. ¶9. The officers reported that Decedent may have swallowed what remained in her mouth, and took her to the Plains Regional Medical Center, Clovis, New Mexico (hereinafter "PRMC") emergency room. Compl. ¶ 10. An emergency room physician ordered x-rays which demonstrated an article in Decedent's nasal pharynx. Compl. ¶12. Decedent was given 2 gm Ativan by IV, 125 mg Slumedrel by IV, 1/1 gm Rocephen by IV and 5 mg Valium by IV. Compl. ¶ 13. Decedent was released at 9:20 p.m. with written instructions for clear fluids for 24 hours and Zithromax. *Id*. The discharge orders provided by the hospital noted cocaine use, aspiration, and throat contusions. *Id*.

Verbal and written instructions were given to the officers who returned Decedent to the Curry County Detention Center. Compl. ¶14. Upon her return to the Curry County Detention

Center, Decedent was placed in a holding cell with other female inmates. Compl. ¶ 15. The guard on duty noted that Decedent was incoherent, conscious on and off, and crawled around. *Id.* At 9:30 a.m. on May 15, 2002, Decedent was taken to a nurse practitioner who checked her blood pressure and ordered a regular diet. Compl. ¶16. Decedent was then returned to her cell. *Id.* Other inmates reported that she was pacing, verbalizing about hair and bugs on the floor, digging at her mattress and sweating profusely. Compl. ¶ 17. Sometime between 10:00 and 11:00 a.m., Decedent was moved to an observation cell. Compl. ¶18. She was observed staring out of the meal tray slot with big, glazed eyes as 3:05 p.m. At 3:35 p.m., Ms. Acy was found face down on the floor with no pulse. Compl. ¶19. CPR was administered until Clovis EMT services arrived at 3:55 p.m. Decedent was transported to PRMC where she was pronounced dead. *Id.* A postmortem examination revealed granular fragments of cocaine substance in the trachea and right bronchus with a ruptured plastic bag in the lumen of the esophagus and numerous granular fragments of cocaine in the duodenum and lumen of the colon. Compl. ¶20. The cause of death was listed as cocaine intoxication on the death certificate of Decedent. Compl. 21.

Plaintiff alleges that Defendants City of Clovis, the Task Force, and Curry County deprived her of constitutional rights by using excessive force to extract cocaine from her mouth (Compl. ¶¶28-35), by exhibiting deliberate indifference to her medical needs (Compl. ¶38), and by failing to train the officers, agents, and detectives of the Clovis Police Department and the Task Force (Compl. ¶¶ 39-41). Plaintiff further alleges that the Task Force officers and Curry County Detention Center officers, the nurse practitioner and the PRMC staff and employees were negligent, grossly negligent, and reckless in their attempt to extract the cocaine from Decedent's mouth, in failing to admit her to the hospital, in failing to exercise all possible lifesaving

techniques, in failing to provide medical checks every 15 minutes from the time she returned to the Detention Center for at least 24 hours thereafter, and in not conveying the information about adequate and proper medical checks to the detention center personnel. Compl. ¶¶43-49. Plaintiff also alleges claim for loss of parental consortium on behalf of Decedent's two minor children.

Defendant Curry County thereafter moved the Court to dismiss all of Plaintiff's claims as set forth against it in the Complaint pursuant to FED. R. CIV. P. 12(b)(6).

## II.  STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may ask the Court to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). If, on a 12(b)(6) motion, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Fed. R. Civ. P. 12(b). After the pleadings are closed, any party may also move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

The courts use the same standard when evaluating 12 (b)(6) and 12 (c) motions. *Jacobsen v. Deseret Book Co.,* 287 F.3d. 936, __, 2002 U.S. App. LEXIS 7351, *4 (10th Cir. April 19, 2002). In ruling on a motion for judgment on the pleadings, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.2d 1138, 1160 (10th Cir. 2000). In accepting the allegations of the complaint as true, the court must consider whether the complaint standing alone, is legally sufficient to state a claim upon which relief may be granted. *Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y,* 163 F.3d 1150, 1152 (10th Cir. 1998). "A complaint may be dismissed pursuant to FED. R. CIV. P.

12(b)(6) only if the plaintiff can prove no set of facts to support a claim for relief." *Gonzales v. City of Castle Rock*, 307 F.3d 1258, 1261 (10th Cir. 2002)(internal citation omitted).   However, "the FEDERAL RULES OF CIVIL PROCEDURE erect a powerful presumption against rejecting pleadings for failure to state a claim." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (citing *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248,1251 (10th Cir. 1999).

### III.   ANALYSIS

**A.   Whether the Complaint states a claim for the liability of Curry County pursuant to *respondeat superior* liability under Section 1983.**

"The law creates no rights and is not a carte blanche statute authorizing recovery for negligence or other common law torts standing by themselves. Indeed, in order to recover in federal court through §§ 1983 a plaintiff must show: (1) a federal constitutional right was violated; and (2) the individual violating the constitutional right did so under color of law." *Quezada v. County of Bernalillo*, 944 F.2d 710, 714 (10th cir. 1991)(citing *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981)).

Defendants have argued and Plaintiff has conceded that a municipality may generally not be held liable solely through *respondeat superior* under Section 1983 pursuant to *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1978), and its progeny.  The Supreme Court has explained that "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  As Plaintiff has

conceded that Curry County may generally not be held liable under § 1983 solely through *respondeat superior*, I turn to Defendant's argument that the Complaint fails to state a claim for liability for failure to train under § 1983.

**B.     Whether the Complaint states a claim for liability for failure to train under Section 1983.**

The Tenth Circuit recently explained the standard for evaluating municipal liability under Section 1983 noting:

> We will not hold a municipality liable for constitutional violations when there was no underlying constitutional violation by any of its officers. When an officer deprives a citizen of a constitutional right, however, municipal governments may incur liability under § 1983 when the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers. Because vicarious liability will not open a municipality to liability simply when one of its officers has committed a constitutional violation, it is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983. In the absence of an explicit policy or an entrenched custom, the inadequacy of police training may serve as a basis of § 1983 liability . . . where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact.

*Olsen v. Mall*, __ F.3d ___, ___, 2002 U.S. App. LEXIS 25446, *29-30 (10th Cir. December 11, 2002).

A municipality's failure to train is in general not enough to prove a constitutional violation. *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1317 (10th Cir.1998). Rather, a §1983 plaintiff "can use a municipality's failure to train as one way to make the required showing that a municipal policy or custom was the 'moving force' behind an already established constitutional deprivation." *Myers*, 151 F.3d at 1318 (citing *Canton*, 489 U.S. at 389). "A

supervisor or municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris*, 489 U.S. 378, 388 (1989). "Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." *Canton*, 489 U.S. at 389.

As noted by the Tenth Circuit, "[i]n order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a plaintiff must first prove the training was in fact inadequate, and then satisfy the following requirements:  (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000). Moreover, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of the County Comm'rs v. Brown,* 520 U.S. at 411.

Identification of a custom or policy is thus a required element of a § 1983 municipal liability case. As the Supreme Court noted:

> in Monell and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Board of the County Comm'rs v. Brown,* 520 U.S. at 403-04 (internal citations omitted).

Paragraph 41 of the Complaint alleges that "[t]he County of Curry failed to properly train its officer/agents/detectives of the Clovis Police Department and the Task Force in search and seizure techniques and due process resulting in the abusive treatment and reckless indifference to the health and medial needs of Joyce Acy which lead to the violation of the Fourth, Fourteenth, and Eighth amendment rights and ultimately to her death." Compl. ¶41.

The only allegation regarding the policy of Curry County was made in the second part of Paragraph 23, wherein Plaintiff alleged that "[s]ubsequent to the death of Joyce Acy, no officers/agents/detective/guards of the Task Force or the Detention Center were disciplined or reprimanded, no admission of error was made, and no changes in policy were affected, thus inferring the conduct of the officers was acceptable to the city of Clovis and the County of Curry." Compl. ¶23

Plaintiff claims that Paragraph 41 of the Complaint, read in conjunction with Paragraph

8

27[2] , is sufficient to meet the notice pleading standards of Rule 8, thereby defeating Curry County's 12(b)(6) motion.  Pl. Response at 5.  Having closely read the Complaint, it is apparent that Plaintiff has failed to make any claim of liability of Curry County based on its policy or custom.  Although Paragraph 41 does indeed allege that Curry County failed to properly train its officers,  the Complaint nowhere refers to, identifies, or otherwise raises the policy or custom of Curry County, as related to the alleged failure to properly train.  However, Plaintiff may be able to remedy this defect if permitted to amend her Complaint.

Causation is an essential element of a § 1983 municipal liability case.  Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.  *Board of the County Comm'rs v. Brown*, 520 U.S. at 414.  The Tenth Circuit's reasoning in *Olsen* is instructive.  In *Olsen*, the Court affirmed a grant of summary judgment in favor of the defendant city, noting that although the plaintiff may have shown that a defendant officer "[had] committed the prerequisite underlying Eighth Amendment violation, [the plaintiff] has not taken the subsequent step of linking the possible violation to a municipality custom or policy."  *Olsen,* 2002 U.S. App. LEXIS 25446 at *32.  The Court reiterated that " [t]he teachings of Monell and its progeny proscribe the attachment of vicarious liability to a municipality merely because the municipality employed the individual who committed a constitutional violation. It is *absolutely necessary* to show that "the 'execution of the government's policy or custom . . . inflicted the injury' in order to hold a municipality . . . liable

---

[2] Paragraph 27 of the Complaint provides that "[e]ach of the Defendants, either jointly or severally, acting alone or in combination, are responsible for the acts alleged herein and are legally responsible for the damages to Joyce Acy."  Compl. ¶27.

under § 1983.'" *Olsen,* 2002 U.S. App. LEXIS 25446 at *32 (citing *City of Canton*, 489 U.S. at 385)(emphasis supplied). The Court noted that because the plaintiff had not "alleged facts bridging the individual violation to a broader municipal custom, no genuine issue of material fact sits in dispute because none has been raised on this claim." *Id.* at *33.

The Tenth Circuit's decision in *Olsen* dealt with a motion for summary judgment. In this case, Defendant alleges that Plaintiff's Complaint fails to state a claim against Curry County for which relief may be granted. Curry County notes that Plaintiff's allegations in Paragraph 41 of failure to properly train "officers/agents/detectives of the Clovis Police Department and the Task Force" is deficient because as Plaintiff noted in Paragraphs 3 and 4 of the Complaint, the City of Clovis is responsible for the Clovis Police Department, of which the Task Force is a section. Compl. ¶¶41, 3, 5. Plaintiff only alleges that Curry County is responsible for the Curry County Adult Detention Center and the contract nurse practitioner of that facility. Compl. ¶5. In her Response, Plaintiff argues that Paragraph 41 of the Complaint "should have read 'Detention Center' in place of 'Clovis Police Department' . . . ." Pl. Response at 5. Plaintiff's allegation in the Response fails to cure any defect in the Complaint. However, Plaintiff may be able to cure this defect if permitted to amend her Complaint. In addition, it is not apparent that Plaintiff could prove no set of facts to support her claims.

Curry County argues that Plaintiff has failed to allege sufficient facts to establish two of the four elements of a § 1983 failure to train claim against a municipality, as recognized in the Tenth Circuit. As noted previously, in order to prevail on a failure to train claim against a municipality pursuant to § 1983, a plaintiff must initially prove the training was in fact inadequate, and thereafter must show (1) a constitutional deprivation; (2) the activity which caused the

alleged deprivation arose under circumstances that constitute a usual and recurring situation; (3) deliberate indifference by the municipality in failing to train its employees; and (4) a direct causal link between the constitutional deprivation and the inadequate training. *See, e.g., Brown v. Gray*, 227 F.3d at 1286; *Myers*, 151 F.3d at 1318.

### 1.     Whether the complaint sets forth a constitutional deprivation.

Defendant argues that the Complaint fails to state a claim for any underlying constitutional deprivation.   The Complaint alleges two constitutional claims: use of excessive force and denial of medical care, in violation of the Fourth and Eighth Amendments to the United States Constitution.   Defendant claims that even taking Plaintiff's allegations as set forth in the Complaint as true, the conduct alleged by Plaintiff does not amount to excessive force as a matter of law, nor did the Defendant's alleged denial of medical care demonstrate deliberate indifference to Plaintiff's serious medical needs.

In *Graham v. Connor*, 490 U.S. 386, 395(1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force-deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."

Various courts which have addressed the question have found that use of some force may reasonable in the search of a person's mouth or other orifice. *See, e.g., United States v. Holloway*, 906 F.Supp. 1437, 1439 (D. Kan. 1995)(use of Capstun, a chemical weapon spray, and placement of officer's knee on suspect's back in attempt to extract cocaine from suspect's mouth

was reasonable); *United States v. Harrison*, 432 F.2d 1328, 1230 (D.C. Cir. 1970)(grabbing suspect by throat to prevent him from swallowing heroin capsules was reasonable); *Singleton v. City of Newburgh,* 1 F. Supp. 2d 306, 314-16 (granted summary judgment to officers who used Heimlich maneuver and pepper spray to try to extract cocaine from plaintiff's mouth; denied summary judgment for officer who applied pressure to plaintiff's throat which caused his death); *but see People v. Johnson,* 231 Cal. App. 3d 1, 15 (Ca. App. 1991)(noting that "attempts to swallow evidence can be prevented as long as excessive force is not employed. However, choking someone to recover evidence violates due process, without any need to inquire into the precise degree of choking involved.")(internal citations omitted).

      The Complaint alleges that "[o]fficers, agents or guards of the Curry County Detention Center searched Decedent's mouth for crack cocaine; that the officers first attempted to search Decedent's mouth while she was handcuffed to a chair, and that when unsuccessful, the officers placed Decedent face down on the ground and held her arms and legs, and extracted some cocaine from her mouth." Compl. ¶9. Given the fact-specific nature of an inquiry into the reasonableness of force used, it is not apparent that Plaintiff could prove no set of facts that would sustain a claim for excessive force.

      In the context of a prison setting, the Eighth Amendment right to medical care is violated if (1) prison officials manifest a deliberate indifference to an individual's medical needs, and those needs are serious. *Myers*, 151 F.3d at 1320 (citing *Wilson v. Seiter*, 501 U.S. 294, 297(1991)). Although the Eighth Amendment applies only to convicted inmates, the Fourteenth Amendment's Due Process Clause guarantees pretrial detainees the same degree of medical attention as the Eighth Amendment provides for inmates. *Myers*, 151 F.3d at 1320 (citing *Martin v. Board of County Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990)).

As alleged in the Complaint, Decedent was transported to a hospital for medical care after the search of her mouth.  Compl. ¶10.  The Complaint does not aver that the Curry County Detention Center was advised by the hospital that Decedent was released with a small bag of cocaine in her pharynx.  Compl. ¶¶11-13.  The Complaint notes that a nurse examined Decedent at 9:30 a.m., that Decedent was moved to an observation cell between 10:00 and 11:00 a.m.; that Decedent was observed staring out of the meal tray slot at 3:05 p.m., and that Decedent was found face down on the floor with no pulse at 3:35 p.m.  Compl. ¶¶10, 13, 16, 17, 18, 19.  The Complaint thus alleges that Decedent was provided medical care twice within 24 hours of being brought to the Detention Center, was observed by the guards, and was provided CPR after being found on the floor with no pulse.  *Id*.

Although Defendant has argued that Plaintiff has not stated a claim for failure to provide medical care, it is not apparent that Plaintiff could prove no set of facts to support her claims.  As such, Plaintiff has not failed to state a claim for excessive force or failure to provide

### 2. Whether the Complaint alleges the rest of the elements of a "failure to train" case under Section 1983.

Defendant argues that Plaintiff has not sufficiently pled a constitutional deprivation as a matter of law.   In order to prevail on a "failure to train" case under § 1983, Plaintiff must also establish that  that the claimed constitutional deprivation  arose under circumstances that constitute a usual and  recurring situation with which the officers must deal; that this custom or policy demonstrates a deliberate indifference on the part of the county toward persons with whom the county officers come into contact, and that there is a direct causal link between the constitutional deprivation and the inadequate training.  *See generally, Brown v. Gray*, 227 F.3d

1278, 1286 (10th Cir. 2000).    An examination of the Complaint demonstrates that Plaintiff has failed to plead each of these elements.  Plaintiff has thus failed to state a claim for "failure to train" under § 1983.

**C.     Whether Curry County has waived its sovereign immunity.**

Defendant claims that Plaintiff has failed to allege that Curry County has waived its sovereign immunity, pursuant to the New Mexico Tort Claims Act. In New Mexico, tort liability against public entities for the negligence of their employees is limited to those circumstances under which the legislature has waived immunity from suit.  *Davis v. Board of County Comm'rs,* 127 N.M. 785, 795, 987 P.2d 1172, 1182 (N.M.Ct. App. 1999)(citing N.M. Stat. Ann.  § 41-4-2(A) (1976)). Section  41-4-12 of the N.M. Stat. Ann. provides that "[t]he immunity granted pursuant [the New Mexico Tort Claims Act] does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." The Act also requires law enforcement officers to be acting within the scope of their duties as a condition to waiver of immunity under the Act. *Davis,* 127 N.M. at 796, 987 P.2d at 1182 (citing *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't,* 121 N.M. 646, 651, 916 P.2d 1313, 1318 (N.N. Ct. App. 1993)).  It appears, however, that New Mexico has not waived its immunity to be sued in federal court. N.M. Stat. Ann. § 41-4-4(A)(2002).  Nevertheless, Plaintiff's claims are not solely based on tort, and Defendants' arguments about waiver of immunity would require an inquiry into the

merits of Plaintiff's constitutional claims. This Court need not delve into the factual disputes on a 12(b)(6) motion. Although the Complaint may fail to state a claim at this juncture, Plaintiff's failure to allege that Curry County has waived its sovereign immunity under the New Mexico Tort Claims Act is an omission which could easily be remedied by amending the Complaint. It is not apparent that Plaintiff could prove no set of facts to support her claims.

**D.     Whether Curry County can be liable under the New Mexico Tort Claims Act for the acts or omissions of an independent contractor.**

Defendant argues that Curry County cannot be held liable for any negligence on the part of the nurse practitioner. However, any arguments about liability may not be sufficiently resolved without inquiring into the degree of authority delegated to the nurse practitioner. This is not an issue which may be resolved in Curry County's favor in reviewing the sufficiency of the Complaint. In addition, the issue of waiver of sovereign immunity was not adequately pled in the Complaint. Plaintiff has thus failed to state a claim for which relief may be granted.

## IV.   CONCLUSION

While the discussion above illustrates the various deficiencies in Plaintiff's Complaint, it is nevertheless apparent that Defendant Curry County is generally on notice as to the nature of Plaintiff's claims. In addition, at the hearing on December 16, 2002, counsel for Plaintiff indicated that he plans to amend the Complaint. The Proposed Discovery Plan, signed by the parties and filed on December 11, 2002 *(Doc. 20)*, indicates that Plaintiff seeks to have until May 1, 2003 in order to add parties and amend the pleadings. At this juncture, I decline to inquire into the factual disputes of this case. On a 12(b)(6) motion, the relevant inquiry is whether the plaintiff can prove no set of facts to support a claim for relief. *See Gonzales v. City of Castle Rock*, 307

F.3d at 1261.  Where the Court cannot rule out the possibility that amendment by the plaintiff will result in a claim being successfully pleaded, the Court may allow the plaintiff to amend her complaint.  *See, e.g., Morales v. Mackalm*, 278 F.3d 126, 133 (2nd. Cir. 2002)(wherein the Second Circuit vacated a dismissal pursuant to 12(b)(6) and remanded to allow a *pro se* plaintiff to amend his complaint). As noted, the Complaint is deficient and fails to state a claim on some of the issues raised by Plaintiff.  However, I am unconvinced that Plaintiff can prove no set of facts to support her claims for relief, nor am I convinced that Plaintiff could not remedy the various defects in her Complaint through Amendment.   In addition,  I note that "the FEDERAL RULES OF CIVIL PROCEDURE erect a powerful presumption against rejecting pleadings for failure to state a claim." *Robbins v. Wilkie*, 300 F.3d at 1210 (citing *Cottrell*, 191 F.3d at 1251.  Therefore, I find that Defendant Curry County's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) is well-taken, and should be **GRANTED in part** as to Plaintiff's § 1983 "failure to train" claim and as to Plaintiff's claims against Curry County under the New Mexico Tort Claims Act.  I will permit Plaintiff a period of thirty (30) days from the entry of this Order to file an Amended Complaint.  If Plaintiff fails to file an Amended Complaint within thirty (30) days, Plaintiff's Complaint shall be **DISMISSED WITHOUT PREJUDICE**.   Defendant, of course, will be free to bring a subsequent 12(b)(6) mMotion after amendment of the Complaint.

      **IT IS, THEREFORE, ORDERED** that Defendant Curry County's Motion to Dismiss filed October 1, 2002 *(Doc. 10)* is **GRANTED IN PART** and **DENIED IN PART**, as noted above.

      **IT IS FURTHER ORDERED** that Plaintiff shall have thirty (30) days from the entry of this Order to file an Amended Complaint; if Plaintiff fails to file an Amended Complaint within the

required time period, the Court will enter an Order dismissing Plaintiff's Complaint without prejudice.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**